UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DENNIS THOMAS,

        Petitioner,

v.                                           Case No. 06-CV-15465-DT
                                            Honorable John Corbett O'Meara

HUGH WOLFENBARGER,

        Respondent.
_____/

**<u>OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS</u>**

        Petitioner Dennis Thomas, a state inmate, presently confined at the Macomb Correctional Facility in New Haven, Michigan, has filed a *pro se* petition for the writ of habeas corpus under 28 U.S.C. § 2254. Petitioner was found guilty of (1) second-degree murder, MICH.COMP.LAWS § 750.317, (2) possession of a firearm by a felon, MICH.COMP.LAWS § 750.224f, and (3) possession of a firearm during the commission of a felony, MICH.COMP.LAWS § 750.227b, in the Wayne County, Michigan, Circuit Court. He was sentenced, as a habitual offender, second, to twenty-to-seventy-years imprisonment for the second-degree-murder conviction and two-to-seven-and-one-half-years imprisonment for the felon-in-possession conviction. Those sentences are to be served consecutively to the five-year-imprisonment term for the felony-firearm conviction. In his pleadings, Petitioner raises four issues, alleging that he is incarcerated in violation of his constitutional rights. Respondent has filed an answer to the petition, asserting that the claims lack merit because the decision of the Michigan Court of Appeals did not result in an objectively

unreasonable application of clearly established Supreme Court law. The Court agrees. Therefore, the petition will be denied.

I.

The charges against Petitioner arise from the murder of forty-seven-year old Vance Spragner in January 7, 2003. The prosecution's theory was that Petitioner shot and killed his neighbor, Mr. Spragner, who was at Petitioner's home, because Petitioner believed Mr. Spragner had stolen some marijuana from him. Joseph Glover , who had been doing some handy work on Petitioner's house, was a witness to the shooting. Mr. Spragner also made several statements to the neighbors before he died.

The preliminary examination in this case was held on November 25, 2003. Joseph Glover was first to testify at the hearing. He said that he knew Petitioner for about three or four years as a friend of the family. Mr. Glover testified that, on January 7, 2003, he arrived at Petitioner's house at about six or seven o'clock in the evening. He said he was at Petitioner's house to do some home-improvement work. Mr. Glover said he did not know the deceased, Mr. Spragner but knew that he was Petitioner's next-door neighbor.

According to Mr. Glover's testimony, he was with Petitioner and Mr. Spragner in Petitioner's living room, on the night in question, when a disagreement erupted between Petitioner and Mr. Spragner. It was Mr. Glover's testimony that when he finished working in the bathroom, around 2:00 a.m. that morning, he heard Petitioner go downstairs and ask Mr. Spragner, "[w]here's the weed?" (Trial Tr. p. 13.) Mr. Glover testified that Petitioner had a gun, and that Mr. Spragner told him that he did not need the gun. Rather, Mr. Glover said that Petitioner told them both to leave.

However, Mr. Glover testified that before leaving he asked Petitioner for the money for the job that he had completed on his house.

Mr. Glover then testified to the following: He said that Mr. Spragner was walking down the stairs, with Petitioner behind him, and, he, Mr. Glover, was behind Petitioner, when Petitioner pushed Mr. Spragner with the gun that he had in his hand, raised it and fired it once. Mr. Glover said that he then ran out of the house, running toward the alley near the house, when he saw Petitioner coming out of the house.

Kellie Woodson also testified at the preliminary examination. She said that she was Petitioner's neighbor and that on January 7, 2003, at around 3:15 a.m., she has reason to come into contact with Mr. Spragner, who told her that he had been shot. It was her testimony that Mr. Spragner told her that Petitioner shot him after accusing him of stealing some "weed" from him. (Trial Tr. p. 42.)

On the basis of the testimony at the preliminary examination, the trial court bound over Petitioner on the charge of first-degree murder, felon-in-possession-of-a-firearm, and felony-firearm. The case then proceeded to a bench trial.

At trial, Dr. Francisco Diaz, an assistant medical examiner for Wayne County, testified that he was the medical examiner that performed the autopsy on Mr. Spragner. Dr. Diaz said that the cause of Mr. Spragner's death was a single gunshot wound that entered the left side of his chest. It was Dr. Diaz's testimony that Mr. Spragner was no more than three feet away at the time of the shooting, because there was gunpowder stippling around the entrance of the wound. Dr. Diaz testified that the cause of Mr. Spragner's death was homicide.

Mr. Glover also testified at trial. Once again, it was his testimony that he knew Petitioner for about three or four years and that he knew who Mr. Spragner was but did not know him personally. Mr. Glover said that he was at Petitioner's home on the night in question, doing some bathroom remodeling. It was his testimony that he arrived at Petitioner's home around six that evening and finished up around 2:00 a.m. Mr. Glover said that Mr. Spragner was also in the house that evening, in the basement, doing some work or "something in the basement for him–Dennis." (Trial Tr. p. 25.)

According to Mr. Glover's testimony at trial, when he finished with the bathroom project, he went to wake up Petitioner and told him that Mr. Spragner was downstairs. He then said that he heard them arguing, and that Petitioner was accusing Mr. Spragner of taking some of his weed. It was Mr. Glover's testimony that Mr. Spragner denied taking the weed and started to strip down to his boxers to show Petitioner that he had nothing on him. Mr. Glover said it was then that Petitioner picked up a gun. Mr. Glover testified to the following colloquy that took place between Petitioner and Mr. Spragner. Mr. Spragner told Petitioner "you done accused me of some bullcrap like this before, [w]e done been through this. You don't need the gun." (Trial Tr. p. 31.) Mr. Glover testified that Petitioner then said, "Yeah, you're right. I don't need the gun." *Id.* It was Mr. Glover's testimony that he then heard the clip come out of the gun and a bullet drop to the floor. Mr. Glover testified that it appeared that Petitioner was under the influence of alcohol.

Mr. Glover testified that, as they were heading down the stairs, it was Mr. Spragner who was going down first, then Petitioner, then him (Mr. Glover.) Mr. Glover said Petitioner started to push Mr. Spragner with the gun that was in his hand. He said that Petitioner then raised the gun and fired it toward Mr. Spragner. Mr. Glover testified that he then began to run out of the house, saw

Petitioner walking toward him, and then ran in the opposite direction. Mr. Glover said he then met up with one of his friends who drove him back to Petitioner's house, where he spoke to the police. Mr. Glover said that he did not see Petitioner reloading the gun or putting the clip back in.

On cross-examination, Mr. Glover testified that he told the police that he did not see anyone get shot but assumed Mr. Spragner got shot because he saw the gun get fired and saw Mr. Spragner on the ground.

Kellie Woodson also testified at trial. She said that she knew Petitioner and Mr. Spragner because they were her neighbors. She testified that she was awakened at about 3:00 a.m., on January 7, 2003, by Mr. Spragner banging loudly on her door. Ms. Woodson said that her grandmother went to the door and asked who was there, and Mr. Spragner identified himself and asked them to call 911. Ms. Woodson testified, over defense counsel's objection, that Mr. Spragner said that he had been shot, stating that "Dennis shot me." (Trial Tr. p. 77-79.) According to Ms. Woodson's testimony, Mr. Spragner's brother was contacted and took him to the hospital. Ms. Woodson also testified that Mr. Spragner's brother was present when he (Mr. Spragner) was making the statements about who shot him and why.

Bernard Spragner, the deceased's brother, testified that he was Petitioner's neighbor for about ten years. According to his testimony, he was awakened on January 7, 2003, at about 3:00 a.m. by a single gunshot. It was his testimony that he heard his brother say that he had been shot and that he received a phone call from the neighbors, informing him that his brother had been shot. Bernard stated that when he embraced his brother on the porch, he stated that "D" shot me. (Trial Tr. p. 88.) Bernard believed that "D" was Petitioner because they called him "Dee" or "Dee Bo."

(Trial Tr. p. 88.) He then said that he helped his brother get into his van and then drove him to the hospital.

Rick Fields, and evidence technician for the Detroit Police Department, testified that he arrived at the scene of the crime about 5:00 a.m. According to his testimony, he found blood outside the house but did not find any weapons, casings, or bullets.

Petitioner testified. He said that in November 2003, he called the police because he had seen his face on the television and that he was wanted by the police as a suspect for murder. According to Petitioner's testimony, he told the police where he was located. The police then picked him up. It was Petitioner's testimony that he previously lived at the location where the shooting occurred but that he did not know anything about the homicide.

On cross-examination, Petitioner stated that from September 2002 through November 10, 2003, he was living at 1415 East Decatur Street, Decatur, Illinois. Petitioner admitted to knowing Ms. Woodson but said that he did not know Mr. Glover.

The trial court found Petitioner guilty of second-degree murder, felony-firearm, and felon-in-possession-of-a-firearm. At the time of sentencing, Petitioner denied that he shot Mr. Spragner. The trial court sentenced Petitioner as a habitual offender, second, to twenty-to-seventy years imprisonment for the second-degree-murder conviction and two-to-seven-and-one-half years imprisonment for the felon-in-possession conviction. Those sentences are to be served consecutively to the five-year-imprisonment term for the felony-firearm conviction

Subsequently, Petitioner, through appointed counsel, filed a first right of appeal with the Michigan Court of Appeals, raising the following claims:

    I.    There was insufficient evidence at trial to support the trial

> court's verdict of second-degree murder.
>
> II. [Petitioner] was denied his state and federal constitutional right to the effective assistance of counsel when trial counsel failed to file an alibi notice and failed to call alibi witnesses.

Petitioner then filed a *pro per* supplemental brief, raising the following claims:

> III. [Petitioner] was denied his state and federal constitutional right to cross-examine his accuser under the Confrontation Clause of the United States Constitution Amendment VI.
>
> IV. [Petitioner] was denied a fair trial when the trial court abused its discretion in allowing Kellie Woodson's statement to be admitted as an excited utterance exception to the hearsay rule, M.R.E. 803(2).

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences in an unpublished, *per curiam* opinion. *People v. Dennis Lennell Thomas*, No. 255126, 2005 WL 1651743 (Mich.Ct.App. July 14, 2005). Subsequently, Petitioner filed an application for leave to appeal that decision in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. On March 22, 2006, the Michigan Supreme Court denied Petitioner's application for leave to appeal. *People v. Dennis Lennell Thomas*, 474 Mich. 1086, 711 N.W.2d 42 (2006) (Kelly, J., would grant leave to appeal).

Thereafter, Petitioner filed the pending petition for a writ of habeas corpus, presenting the following claims:

> I. There was insufficient evidence at trial to support the trial court's verdict of second-degree murder.
>
> II. [Petitioner] was denied his state and federal right to effective assistance of counsel.
>
> III. [Petitioner] was denied his state and federal constitutional right to cross-examine his accuser.

IV. The trial court abused its discretion when it allowed Kellie Woodson's hearsay statement to be used as an excited utterance.

II.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this court's habeas corpus review of state-court decisions. Specifically, 28 U.S.C. § 2254(d) states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

Under (d)(1), a federal court may grant a writ of habeas corpus under two different clauses, both of which provide two bases for relief. Under the "contrary to" clause, a federal court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed." *Id.*

Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but

unreasonably applies that principle to the facts. *Williams*, 529 U.S. at 407-08. Relief is also available under this clause if the state-court decision either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005). The proper inquiry for the "unreasonable application" analysis is whether the state-court decision was "objectively unreasonable" and not simply erroneous or incorrect. *Williams*, 529 U.S. at 407; *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004).

In analyzing whether a state-court decision is "contrary to" or an "unreasonable application of" clearly established Supreme Court precedent, a federal court may only look to the holdings, as opposed to dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *Williams*, 529 U.S. at 412.

With that standard in mind, the Court proceeds to the merits of the petition for a writ of habeas corpus.

A.

Petitioner first contends that there was insufficient evidence to support his bench-trial conviction of second-degree murder.

A claim that the evidence was insufficient to convict a petitioner is cognizable under 28 U.S.C. § 2254. Because the Due Process Clause "forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt," *Fiore v. White*, 531 U.S. 225, 228-29 (2001), "a state-law question regarding the elements of the crime predicates the enforcement of [Petitioner's] federal constitutional right." *Richey v. Mitchell*, 395 F.3d 660, 672

(6th Cir. 2005).

Sufficient evidence supports a conviction if, after viewing the evidence (and all inferences to be drawn therefrom) in a light most favorable to the prosecution, the court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003), *cert. denied*, 540 U.S. 1148 (2004). This standard of review obviously does not permit the federal court to make its own subjective determination of guilt or innocence; the standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993); *McKenzie,* 326 F.3d at 727. This due process guarantee of sufficiency of the evidence extends only to facts needed to establish the elements of the crime and not to the state's burden to prove the absence of an affirmative defense; however, if the state has made the absence of a defense an element of the crime, sufficiency of evidence on the issue will then be relevant. *Allen v. Redman*, 858 F.2d 1194, 1196-98 (6th Cir. 1988). Circumstantial evidence may support a conviction and such evidence need not remove every reasonable hypothesis except that of guilt. *See Clifford v. Chandler*, 333 F.3d 724, 728 (6th Cir. 2003), *cert. denied*, 124 S.Ct. 1601 (2004); *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

The Michigan Court of Appeals, the last court to issue a reasoned decision in this case, found:

> A claim of insufficient evidence is reviewed de novo to determine if, when reviewed in the light most favorable to the prosecutor, the evidence presented could lead a rational trier of fact to find beyond a reasonable doubt that the elements of the crime were proven. *People v. Johnson*, 460 Mich. 720, 723; 597 NW2d 73 (1999). The reviewing court must draw any reasonable inference and

resolve any credibility conflict in support of the verdict. *People v. Nowack*, 462 Mich. 392, 400; 614 NW2d 78 (2000). "The elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v. Goecke*, 457 Mich. 442, 463-464; 579 NW2d 868 (1998), citing *People v. Bailey*, 451 Mich. 657, 669; 549 NW2d 325 (1996).

"'Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.'" *People v. Fletcher*, 260 Mich.App 531, 559; 679 NW2d 127 (2004), quoting *Goecke*, *supra* at 464. Because state of mind is hard to prove, minimal circumstantial evidence is required. *People v. Fennell*, 260 Mich.App 261, 270-271; 677 NW2d 66 (2004). Here, a witness observed defendant raise a gun, point it in the victim's direction, and fire it. Thus, when viewed in the appropriate light, the evidence was sufficient for the trial court to conclude that defendant had the requisite intent. *Fletcher*, *supra* at 559.

Nevertheless, defendant argues that the prosecution failed to proffer any evidence that his shooting of the victim was "without justification or excuse," where the evidence at trial allegedly showed that the shooting was an accident. An accident is an excuse that will negate the intent element of murder. *People v. Hess*, 214 Mich.App 33, 38; 543 NW2d 332 (1995). Defendant offered no evidence supporting his claim of "accident" at trial, but on appeal relies solely on the witness' erroneous belief that the gun was not loaded. Although the eyewitness to the shooting testified that he heard defendant empty the chamber and a bullet fall to the floor, and he did not see whether defendant reloaded the gun, the witness' state of mind was irrelevant to whether defendant knew the gun was loaded. Therefore, we reject defendant's argument.

*People v. Dennis Lennell Thomas*, No. 255126, 2005 WL 1651743, slip op. at 1-2 (Footnote omitted).

Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court

-11-

precedent. In making this determination, this Court must afford the state court's findings of fact a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. § 2254(e)(1); *West v. Seabold*, 73 F.3d 81, 83 (6th Cir. 1996), *cert. denied*, 518 U.S. 1027 (1996).

Petitioner has failed to show that the state court's decision was contrary to, or an unreasonable application of, Supreme Court precedent. The Michigan Court of Appeals held that, based on the foregoing facts, a rational trier of fact could have found Petitioner guilty of second-degree murder; the trial court was presented with overwhelming evidence. That determination was itself correct and a reasonable application of *Jackson*, 443 U.S. at 324. Accordingly, Petitioner is not entitled to federal habeas corpus relief with respect to this claim.

B.

Next, Petitioner alleges that trial counsel was ineffective for failing to file an alibi notice and failing to call alibi witnesses.

To establish ineffective assistance of counsel, it must be shown that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

With respect to the performance prong of the *Strickland* test, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Strickland*, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

The Michigan Court of Appeals denied Petitioner relief on his ineffective assistance of counsel claim, finding:

> Challenges to the effectiveness of trial counsel present mixed questions of fact and constitutional law. *People v. LeBlanc*, 465 Mich. 575, 579; 640 NW2d 246 (2002). The court's factual findings are reviewed for clear error while constitutional questions are reviewed de novo. *Id.* To establish ineffective assistance of counsel, a defendant must show: (1) that counsel performed below an objective standard of reasonableness, and (2) it was reasonably probable that the result of the proceedings would have been different had it not been for counsel's errors. *People v. Toma*, 462 Mich. 281, 302-303; 613 NW2d 694 (2000). To show that counsel's performance was below an objective standard of reasonableness, a defendant must overcome the presumption that counsel's actions were sound trial strategy. *Id.* at 302.
>
> Counsel's failure to call witnesses is presumed to be trial strategy, *People v. Rockey*, 237 Mich.App 74, 76; 601 NW2d 887 (1999), and relief is warranted only when the failure deprived the defendant of a substantial defense, *People v. Hoyt*, 185 Mich.App 531, 537-538; 462 NW2d 793 (1990). While defendant alleges in general terms that counsel's failure to provide notice of an alibi defense and failure to investigate and call alibi witnesses deprived him of a substantial defense, he has failed to establish the factual predicate for his claim. *People v. Carbin*, 463 Mich. 590, 600; 623 NW2d 884 (2001). Defendant testified at trial that he lived in Decatur, Illinois from September, 2002, to November 10, 2003, and, thus, was not in Michigan when the murder occurred. Although he

> claimed to have lived in another state for fourteen months, he has not provided the name or affidavit of a single witness who could verify his assertion.
>
> Regardless, defendant failed to demonstrate a reasonable probability that, but for counsel's purported errors, the result of the proceedings would have been different. One witness testified that he was standing a few feet away when he saw defendant point and shoot the gun at the victim, and he shortly thereafter saw the victim moaning on the ground. Two other witnesses testified that the victim identified defendant as his shooter. One of the witnesses–the victim's brother–stated that defendant and the victim had been friends, and the three witnesses testified that they knew defendant, indicating that this was not a case of mistaken identity. Notwithstanding defendant's claim that he was in Illinois at the time of the shooting, defendant admitted at trial that he used to live at the house where the shooting occurred. Even if alibi testimony had been presented, there is no indication, given the overwhelming evidence to the contrary, that the result of the proceedings would have been different. *Toma*, *supra* at 302-303.

*People v. Dennis Lennell Thomas*, No. 255126, 2005 WL 1651743, slip op. at 2 (Footnotes omitted).

The Michigan Court of Appeals' decision that Petitioner failed to establish the factual predicate for his claim, that Petitioner failed to rebut the presumption that counsel's failure to call alibi witnesses constituted sound trial strategy, and that Petitioner failed to demonstrate the requisite prejudice, was neither an unreasonable application of Supreme Court precedent nor an unreasonable determination of the facts. Petitioner does not identify the alibi witnesses that could have been called nor does he indicate what those witnesses would testify to regarding his whereabouts on the day in question. Regarding the prejudice prong of the *Strickland* analysis, the Michigan Court of Appeals reasonably concluded that, even if alibi testimony had been presented, there is no indication, given the overwhelming evidence to the contrary, that the result of the proceedings would have been different.

Therefore, the Court agrees with the decision of the Michigan Court of Appeals and finds

that Petitioner is not entitled to habeas relief on this claim.

C.

Petitioner next argues that his right to confrontation was violated when the prosecutor attempted to impeach him with a signed statement by his mother.

This claim is procedurally defaulted. A procedural default occurs when a state procedure bars a petitioner's claim and the state court "clearly and expressly" relied on that bar. *Harris v. Reed*, 489 U.S. 255, 263 (1989). Here, the Michigan Court of Appeals, the last court to issue a reasoned decision in this case, stated in pertinent part:

> Defendant's challenge based on the Confrontation Clause is raised for the first time on appeal and is therefore unpreserved. An unpreserved Confrontation Clause challenge is subject to review for plain error. To avoid forfeiture under the plain error rule, a defendant must show that clear and obvious error occurred, which prejudiced the defendant by affecting the outcome of the trial court proceedings. Reversal is required only when the plain error caused an innocent defendant to be convicted or seriously affected the fairness, integrity, or public reputation of the proceedings regardless of the defendant's innocence.
>
> "'The right of confrontation insures that the witness testifies under oath at trial, is available for cross-examination, and allows the jury to observe the demeanor of the witness.'" Recently, in *Crawford v Washington*, 541 US 36, 68; 124 SCt 1354; 158 LEd2d 177 (2004), the United States Supreme Court held that testimonial hearsay is admissible against a criminal defendant only if the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. Although the *Crawford* Court "[left] for another day any effort to spell out a comprehensive definition of 'testimonial,'" it stated, "Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."
>
> Because defendant's mother's statement was made to a police officer, and the mother did not testify at trial, the statement arguably qualified as a "testimonial"statement. On the other hand, the

> statement was used to impeach defendant's testimony; it was not introduced as substantive evidence that defendant committed the crime, and it was not admitted into evidence. Because the statement was not admitted, we find no *Crawford* violation. Regardless, even if the trial court did err in this regard, the error was not outcome determinative because the statement was not the primary evidence supporting his convictions.
>
> One witness testified that he witnessed defendant shoot the victim, and there was additional witness testimony that the victim identified defendant as the shooter. In this respect, defendant's mother's statement about what defendant told her was merely cumulative. We conclude that the prosecutor's questions did not affect the outcome of the trial court proceedings. Defendant, therefore, has failed to establish a plain error warranting reversal.

*People v. Dennis Lennell Thomas*, No. 255126, 2005 WL 1651743, slip op. at 3-4.

Against that backdrop, this Court finds that Petitioner's third habeas claim is procedurally defaulted and barred from habeas review. Even if the Court did not find that the claim was procedurally defaulted, the Court finds that the Michigan Court of Appeals' decision regarding this claim was neither an unreasonable application, nor contrary to, clearly established Supreme Court precedent. The Michigan Court of Appeals properly determined, even if an error occurred, any error was not outcome determinative because the statement was not the primary evidence supporting Petitioner's convictions. That determination is supported by the record in this case. Therefore, the Court finds that Petitioner is not entitled to habeas relief in regard to this claim.

D.

Next, Petitioner argues that the trial court erred in admitting the victim's statement to one of the witnesses, Kellie Woodson, identifying Petitioner as the shooter, under the excited utterance exception to the hearsay rule, M.R.E. 803(2). The Michigan Court of Appeals, rejecting this claim,

reasoned as follows:

> This Court reviews a trail court's decision to admit evidence under a hearsay exception for an abuse of discretion. *People v. Geno*, 261 Mich.App 624, 631-632; 683 NW2d 687 (2004). If an unprejudiced person would find no justification or excuse for the ruling when considering the facts before the trial court, then an abuse of discretion has occurred. *People v. Taylor*, 195 Mich.App 57, 60; 489 NW2d 99 (1992). MRE 803(2) provides that a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition," is not excluded by the hearsay rule. This Court has explained:
>
>> The pertinent inquiry is not whether there has been time for the declarant to fabricate a statement, but whether the declarant is so overwhelmed that [he] lacks the capacity to fabricate. [*People v. McLaughlin*, 258 Mich.App 635, 659-660; 672 NW2d 860 (2003), citing *People v. Smith*, 456 Mich. 543, 551; 581 NW2d 654 (1998).]
>
> Here, the trial court did not abuse its discretion in finding that the victim was so overwhelmed that he lacked the capacity to fabricate. *Id.* The witness testified that the victim appeared to have been shot shortly before he implicated defendant. The victim was having trouble breathing and was upset. The record showed that the victim's statement related to an event that unquestionably qualified as a startling event for purposes of MRE 803(2), and that the victim was under the stress of excitement caused by the event or condition.

*People v. Dennis Lennell Thomas*, No. 255126, 2005 WL 1651743, slip op. at 4.

The Court finds that Petitioner's claim is essentially one involving an alleged violation of the Michigan Rules of Evidence, and thus, is not cognizable upon federal habeas review.

Here, Petitioner has failed to establish that the admission of Woodson's statement violated his federal constitutional rights. "Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994). Only "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *Bugh v.*

*Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). Here, the Court finds that Petitioner has not demonstrated that the admission of Woodson's testimony violated his federal constitutional right to a fair trial. Petitioner is therefore not entitled to habeas relief regarding this claim.

### III.

The state-court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. Petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.


s/John Corbett O'Meara
United States District Judge

Date: April 15, 2008


I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, April 15, 2008, by electronic and/or ordinary mail.

s/William Barkholz
Case Manager